UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SMITH,

        Plaintiff,                              Case No. 16-cv-13673

vs.                                              HON. MARK A. GOLDSMITH

ANTHONY STEWART,
et al.,

        Defendants.
_____/

**OPINION & ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 27)**

This matter is before the Court on Defendants Anthony Stewart and Randy Franks' motion for summary judgment (Dkt. 27). The motion has been fully briefed, and a hearing was held on May 3, 2018. For the reasons that follow, Defendants' motion is granted.

**I.    BACKGROUND**

Plaintiff William Smith, an African-American male, began working for the Michigan Department of Corrections ("MDOC") as a Corrections Officer at the Detroit Detention Center ("DDC") on March 18, 2001. Compl. ¶ 13 (Dkt. 1). Defendant Anthony Stewart was the Warden of the DDC, and Defendant Randy Franks was the Discipline Coordinator. Id. ¶¶ 6-7. On April 26, 2014 – a Saturday – Smith allegedly became involved in an argument with his former fiancée, which led to police involvement. Def. Statement of Material Facts ("SMF") ¶¶ 2-7 (Dkt. 27).

On April 28, 2014 – the following Monday – the Detroit Police Department contacted Stewart, the Warden at the DDC, to inform him that Smith was allegedly involved in a felony. Id. ¶ 13. MDOC Departmental Manager, Jimmy Waters, also sent an internal memo to the deputy warden describing the alleged incident and stating that the Detroit Police intended to arrest Smith

1

while he was at work. Statement of Additional Material Facts ("SAMF") ¶ 22 (Dkt. 32). Smith did not come into work that day. SMF ¶ 15. The following day, Smith was arrested at his home for felonious assault and taken to the DDC. SMF ¶ 17; Smith Dep. Tr., Ex. I to Pl. Mot., at 70, PageID.1060 (Dkt. 32-9). At the DDC, Smith encountered his supervisor, Shanequa Owens, and informed her that he had had police contact. SAMF ¶ 49. Smith was suspended from work without pay. Smith Dep. Tr. at 157, PageID.1081.[1]

An allegation of wrongdoing triggers MDOC's disciplinary procedures. An investigation is commenced to determine whether the charges have merit, and the employee is typically notified that he or she is being investigated. SAMF ¶ 1. Following the investigation, MDOC schedules a disciplinary conference with the employee to determine if there is enough evidence to substantiate an allegation that is raised in the investigatory report, and the employee will receive notice of the disciplinary conference. SAMF ¶ 9. After the conference, MDOC notifies the employee in writing of the results and the disciplinary action to be taken or recommended. SAMF ¶ 15.

While Smith was detained at the DDC, Aaron Payne, an investigator in MDOC's Internal Affairs division, came to speak with him. SAMF ¶ 44. Smith told Payne to contact his attorney. Id. Smith was later provided with a questionnaire regarding his arrest. See Memorandum re:

---

[1] Per the Collective Bargaining Agreement ("CBA"), "[a]ny employee indicted by a grand jury, or against whom a criminal charge has been brought by a prosecuting attorney for conduct on or off the job, may be immediately suspended from duty without pay. Such suspension may, at the discretion of the Appointing Authority, remain in effect until the indictment or charge has been fully disposed of by trial, quashing or dismissal." Collective Bargaining Agreement, Ex. C to Pl. Resp., at 47, PageID.986 (Dkt. 32-3). An employee who is acquitted or has her indictment quashed or dismissed "shall be reinstated in good standing and made whole if previously suspended in connection therewith unless disciplinary charges, if not previously brought, are filed within ten weekdays of receipt of confirmation at the employee's Personnel Office of the results of the case, and appropriate action in accordance with this Article is taken concerning the employee." Id. at 48, PageID.987.

A separate section of the CBA provides that if an employee is suspended for investigation, suspension without pay "shall not exceed a total of seven calendar days." Id. at 47, PageID.986.

Investigative Questionnaire: Internal Affairs Investigation IA-14-12100, Ex. 5 to Def. Mot. (Dkt. 27-6). The questionnaire asked whether Smith was arrested on April 26, 2014 for felonious assault and if yes, asked him to explain. Smith wrote that he was not arrested on April 26, 2014. It also asked whether he reported his arrest, and to explain completely and in detail; Smith replied, "I was detained, at DDC." The questionnaire asked about the current status of court proceedings, which Smith provided; told him to forward court documents to his personnel office within seventy-two hours of the completion of his court proceedings, which Smith stated he would do; and asked whether Smith had any other information to add, to which Smith wrote, "Attorney Byron Pitts" and a phone number. Id.

The investigation into Smith's arrest was finished on June 20, 2014. SMF ¶ 24. The investigation report concluded that Smith appeared to have violated two work rules: Rule No. 5, Conduct Unbecoming, and Rule No. 38, Reporting Requirements. SMF ¶ 25; Investigation Report, Ex. 6 to Def. Mot., at 6, PageID.352 (Dkt. 27-7).

Rule No. 5 of the MDOC Employee Handbook provides,

> Employees shall not behave in an inappropriate manner or a manner which may harm or adversely affect the reputation or mission of the Department. Employees have a special responsibility to serve as role models. Employees must also support and uphold the law through their own actions and personal conduct.
>
> If an employee is arrested for or charged with a criminal offense, the behavior shall be investigated to determine whether such activity violates this rule. Violation of this rule is not contingent upon whether or not an employee has been arrested. If the investigation establishes a violation of this rule, whether it occurred on or off duty, disciplinary action up to and including discharge may result regardless of any prosecutorial action or court disposition.
>
> Any conduct by employees involving theft shall result in discharge.

MDOC Employee Handbook, Ex. 7 to Def. Mot., at 20, PageID.356 (Dkt. 27-8). Rule No. 38 provides,

3

> Employees shall timely submit accurate and complete oral and written reports when required by Department policy, procedure, post order or work statement, or when requested by a supervisor or other authorized personnel. Failure to provide reports that are accurate and complete is a violation of this work rule.

Id. at 34, PageID.359. The employee rules also state that

> Employees shall provide a verbal report to their immediate supervisor, or if unavailable to the next available manager in their chain of command, within 24 hours after any felony citation or arrest. This verbal report shall be followed up within 72 hours with a written report by the employee to the appropriate Deputy Director, Administrator or Warden.

Id. at 24, PageID.357. Employees are also required to provide written reports to their immediate supervisor within 24 hours after "any stage or phase of an arrest or prosecution." Id. at 25, PageID.358. The investigation report stated that there was sufficient evidence to support the allegation that Smith violated Rule No. 5 when he was arrested for felonious assault, and sufficient evidence to support that allegation that Smith violated Rule No. 38 when he failed to notify his chain of command in writing of his felony arrest, arraignment, and/or court date(s). Investigation Report at 6, PageID.352.

On June 21, 2014, a Notice of Disciplinary Conference was apparently "produced." SMF ¶ 33. There is no indication that Smith received this notice: the employee signature is missing, and an Employee Disciplinary Report dated September 8, 2014 is blank in the space provided for "DATE the Employee was Served with a Written Notice of Charge," see Employee Disciplinary Report, Ex. G to Pl. Resp. (Dkt. 32-7). The Notice does not list a time or place for the conference. See Notice of Disciplinary Conference, Ex. 10 to Def. Mot. (Dkt. 27-11). Smith testified that he did not recall whether he had received a Notice of Disciplinary Conference, but believed that he did not "[b]ecause any of the disciplinary conference I receive I usually sign for." Smith Dep. Tr. at 120-121, PageID.1072. The Collective Bargaining Agreement states that the employee "shall

be given and be requested to sign for a copy of the written statement of charges[.]" Collective Bargaining Agreement, Ex. C to Pl. Resp., at 49, PageID.987 (Dkt. 32-3).

A disciplinary conference was held on August 1, 2014. SMF ¶ 31. Smith attended the conference, along with a union representative, Kenneth Gibson. Id. ¶ 35; Record of Disciplinary Conference, Ex. 9 to Def. Mot. (Dkt. 27-10). Smith testified that he only knew to attend the conference because he received a phone call from a union representative within a week before the conference. Smith Dep. Tr. at 121, PageID.1072. Smith also stated that, before the conference began, Gibson asked for additional time to prepare, but his request was denied. Id. at 111, PageID.1070.

The record of the disciplinary conference reflects that Smith informed those present that the charge of assault less than murder against him was dismissed. SAMF ¶ 37, Record of Disciplinary Conference, Ex. K to Pl. Resp., at 1, PageID.363 (Dkt. 32-11). He further stated that his next court date would be August 7, 2014, where he would be heard on charges of two counts of felonious assault, felony-firearm, and destruction of property of $20,000. Record of Disciplinary Conference at 1, PageID.363. Smith disputed the factual allegations underlying his charges and alleged work violations. SAMF ¶ 37.

At the conclusion of the hearing, Stewart determined that Smith's behavior violated MDOC Rules 5 and 38, and recommended that Smith be discharged. SMF ¶¶ 41-42. On September 8, 2014, MDOC Discipline Coordinator Jennifer Nanasy also decided to terminate Smith, SMF ¶ 43; Nanasy provided an affidavit stating that she independently determined that discharge was appropriate. Jennifer Nanasy Aff., Ex. 2 to Def. Reply, ¶ 13 (Dkt. 37-3). Smith was terminated on September 8, 2014. SAMF ¶ 27.

Following the termination, Smith had the ability to file a grievance through his union or with the Michigan Civil Service Commission. SMF ¶ 44. A grievance filed through the union would need to be filed within twenty-one days of his termination; for a grievance filed pursuant to the Michigan Civil Service Commission guidelines, the deadline would be fourteen days after his termination. Id. ¶¶ 45-46. Smith testified that he did not grieve his termination because he "tried to get [his] union representation to put a grievance in for [him] and they refused to." Smith Dep. Tr. at 133, PageID.1075. He testified that he made multiple efforts through the union but was unsuccessful, and that he told "numerous union personnel" about these difficulties. Id. at 134, PageID.1076.

Eduardo Reyes, the former MDOC union local chapter Vice President and President, testified that he filed a grievance on Smith's behalf, but he could not identify when the grievance was filed or produce a copy of it. SMF ¶ 48. MDOC has no record of receiving a grievance submitted by or on behalf of Smith in 2014. Id. ¶ 51.

The charges against Smith were dismissed without prejudice on March 18, 2015. Order of Dismissal, Ex. 16 to Def. Mot. (Dkt. 27-17). Smith attempted to have MDOC reinstate him to his position, but his request was denied. SAMF ¶¶ 60-61. Franks testified that he could not recall an instance where an employee was charged with a felony and failed to be reinstated after the felony charges were dismissed. SAMF ¶ 65.

Smith filed the instant complaint on October 10, 2016, alleging violations of his due process and equal protection rights and a claim of conspiracy. Defendants have moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

Smith asserts several claims pursuant to 42 U.S.C § 1983. To prevail on a § 1983 claim, a plaintiff must prove that "(1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileged, or immunities secured by the

Constitution or laws of the United States." Fridley v. Horrighs, 291 F.3d 867, 871-872 (6th Cir. 2002). Here, as employees of the MDOC, there is no dispute that Stewart and Franks were acting under the color of state law.

### a. Procedural Due Process Violation

Smith argues that he was denied his right to procedural due process, guaranteed by the Fourteenth Amendment to the Constitution, because he was denied the pre-termination and post-termination process which he is owed as a public employee.

"[P]rior to termination of a public employee who has a property interest in his employment, the due process clause requires that the employee be given 'oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer.'" Farhat v. Jopke, 370 F.3d 580, 595 (6th Cir. 2004) (quoting Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir. 1990)). A full evidentiary hearing is not required, as the pretermination hearing "is to provide an initial check against mistaken conclusions, 'essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Id. (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-546 (1985)).

Smith certainly received notice of the conference – although he may not have received the standard notice form, he did learn that the conference was taking place, and appeared with a union representative. The record of the conference reflects that Stewart provided a summary of the allegations against Smith, and allowed him an opportunity to respond. Smith admits that he took such an opportunity, stating that at the conference he denied all of the facts underlying his alleged work violations. SAMF ¶ 37.

8

Smith argues that he "was not even aware of the charges until he showed up at the conference with no time to adequately prepare." Pl. Resp. at 25, PageID.831 (Dkt. 32). There is no indication in the record that, prior to the hearing, Smith was aware of what the charges against him were. The Notice of Conference clearly provides this information, but as stated, there is no indication that Smith ever received this Notice. The Questionnaire that Smith received in May does not provide any information about which rules he was accused of violating.

However, he was informed at the conference of the charges against him. "[A]n employee has a right to be informed of the nature of the charges, but is not necessarily entitled to significant advance warning of the time of the hearing. Indeed, other courts have found pretermination proceedings to be constitutionally adequate where an employee was only informed of the nature of the charges during the hearing." Lusher v. City of Mansfield, No. 05-1754, 2007 WL 756655, at *7 (S.D. Ohio Mar. 8, 2007), aff'd, 279 Fed. App'x 327 (6th Cir. 2008). "[T]he critical inquiry at this early stage is whether the charges are accurate and the employee understands them, not whether the employee has had a sufficient amount of time to fully prepare for an adversary-type hearing." Id.

Similarly, in Upton v. City of Royal Oak, 492 F. App'x 492, 500 (6th Cir. 2012), the plaintiff, a firefighter, received notice that the Board of Trustees would consider his (involuntary) retirement at an upcoming meeting. He argued that he was denied due process because, among other reasons, he did not receive notice of the charges against him. The Sixth Circuit found that "the City explained at the meeting its evidence against Upton and gave Upton an opportunity to respond to that evidence . . . . Thus, Upton received notice of the charges against him at the Board meeting and was afforded opportunity to respond to those charges." Id. at 501. The court concluded that his claim that the pre-deprivation hearing violated his due process right failed.

9

Here, Smith was informed of the charges against him at the hearing, was informed of the evidence against him, and had the opportunity to respond to the charges. He therefore received the pre-termination due process to which he is entitled.

Smith also argues that he was not afforded his post-termination due process.[2] Compl. ¶ 64. "The law is well-established that it is the <u>opportunity</u> for a post-deprivation hearing before a neutral decisionmaker that is required for due process." Farhat, 370 F.3d at 596 (emphasis in original). "The law is also clear that grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process." Id. (quoting Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998)). If an employee refuses to participate, or chooses not to participate, in the post-termination proceedings, he has waived his procedural due process claim. Id.

Here, Smith had post-termination remedies available; although he claims that he was unable to file a grievance, this appears to be an issue with his union rather than with Defendants. See Smith Dep. Tr. at 133, PageID.1075 ("I tried to get my union representation to put a grievance in for me and they refused to."). This does not amount to deprivation of due process by Defendants. See Rhoads v. Bd. of Educ., 103 F. App'x 888, 897 (6th Cir. 2004) ("The fact that the Union elected not to pursue arbitration on [Plaintiff's] behalf does not amount to a deprivation of her right to due process by [Defendant].").

---

[2] Smith seems to argue in his response brief that his due process rights were violated because he was not reinstated following the dismissal of all charges against him: "Finally, to top it all off, Mr. Reyes testified to receiving a timestamped copy of the grievance he filed on Plaintiff's behalf. Despite this, Plaintiff was never reinstated following the dismissal of all charges against him and was never made whole . . . ." Pl. Resp. at 26, PageID.832. Smith does not explain how this amounts to a procedural due process violation; as explained infra, the only post-termination procedural due process to which he is entitled is the opportunity for a post-deprivation hearing.

10

Smith also claims that Eduardo Reyes filed a grievance on his behalf. The Grievance Procedure provides that a non-probationary employee who alleges that she was suspended, demoted, or discharged without just cause may initiate a grievance: "In the Department of Corrections, grievances regarding disciplinary action for a penalty determined by the director or his/her designee shall be filed directly to Step 2. All other disciplinary action grievances shall be initiated in writing and filed to the Step 1 designee." MCO Agreement, Ex. 13 to Def. Mot., at 31, PageID.392 (Dkt. 27-14). The time limit for a Step 1 grievance is twenty-one days; for Step 2, the grievance must be appealed "within 45 calendar days from receipt of the Step 1 written answer." MCO Agreement at 34, PageID.395. Reyes does not know when he filed the grievance, saying only in his deposition that "it was warm outside." Eduardo Reyes Dep., Ex. Q to Pl. Resp., at 30, PageID.1122 (Dkt. 32-17). He did not remember what year it was. Id. There is, therefore, no evidence that Reyes timely filed the grievance, and as such, no indication that Smith was denied post-deprivation due process.

Based on the above, Smith's procedural due process claim is denied.

### b. Substantive Due Process Violation

In order to state a substantive due process claim, a plaintiff must show either "(1) official acts that are unreasonable and arbitrary and 'may not take place no matter what procedural protections accompany them,' [or] (2) official conduct that 'shocks the conscience.'" Harris v. City of Akron, 20 F.3d 1396, 1405 (6th Cir. 1994) (quoting Wilson v. Beebe, 770 F.2d 578, 586 (6th Cir. 1985)). Smith argues that by failing to provide him with procedural due process, Defendants violated his substantive due process rights. Pl. Resp. at 27, PageID.833. He contends that such an act is "unreasonable and arbitrary" in violation of the Fourteenth Amendment. Id.

11

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (finding substantive due process analysis appropriate because claim was not "covered by" the Fourth Amendment). Here, Smith essentially argues that because his procedural due process rights were violated, his substantive due process rights were violated. His substantive due process claim is therefore covered by the procedural due process clause, and as discussed supra, such a claim fails.

The Due Process Clause also "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Smith alleges in his complaint that he had a liberty interest in his employment with MDOC. Compl. ¶ 76. But his right to employment is created by state law, and is "not subject to substantive due process protection under the Due Process Clause because substantive due process right are created only by the Constitution." Young v. Twp. of Green Oak, 471 F.3d 674, 684 (6th Cir. 2006) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)). Although "a substantive due process right may be implicated when a public employee is discharged for reasons that shock the conscience," Hange v. City of Mansfield, Ohio, 257 F. App'x 887, 896-897 (6th Cir. 2007) (quoting Perry v. McGinnis, 209 F.3d 597, 609 (6th Cir. 2000)), the reasons for Smith's dismissal do not rise to this level.

For these reasons, Smith's substantive due process claim is dismissed.

c. **Equal Protection Clause Violation**

Smith argues that his right to equal protection was violated because a number of other MDOC employees were charged with felonies based on conduct similar to that of which Smith

was accused, but were not terminated and are still employed by MDOC. Pl. Resp. at 28, PageID.834.

"To establish an equal protection claim against a public employer under § 1983, the plaintiff must show that the employer made an adverse employment decision with discriminatory intent and purpose." Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000) (quotations omitted). A plaintiff can make this required showing through indirect evidence under the McDonnell Douglas framework. Id. at 523. This framework first requires that a plaintiff establish a prima facie case; once this has been shown, the plaintiff is entitled to a presumption that the defendant discriminated against him. Wright v. Murray Guard, Inc., 455 F.3d 702, 706 (6th Cir. 2006).[3] The burden then switches to the defendant to put forth a "legitimate, nondiscriminatory reason" for the adverse treatment. Id. If the defendant meets such burden, "the presumption of discrimination create by the prima facie case falls away, and the plaintiff then needs to show that the legitimate nondiscriminatory reason was a pretext for discrimination." Id. at 706-707 (citations and quotations omitted). Throughout this process, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. Id. at 707.

To establish a prima facie case, Smith must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for his position, and (4) he was treated differently than similarly-situated non-protected employees. Wright, 455 F.3d at 707. The parties dispute only this final element.

Defendants argue that Smith cannot prove that he was treated differently than non-protected individuals for the same or similar conduct. Def. Mot. at 19, PageID.284. Smith argues

---

[3] Although Wright involved a claim of racial discrimination under Title VII, "[b]ecause both Title VII and § 1983 prohibit discriminatory employment practices by public employers, [the Sixth Circuit] looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983." Weberg, 229 F.3d at 522.

13

that he has "testified to a number of employees, including some charged with felonies based on conduct similar to that which he was accused of, that were not terminated[.]" Pl. Resp. at 28, PageID.834. The principle evidence Smith has is his own deposition testimony, where he admitted that he did not know many of the particulars of these individuals' situations, did not see police reports or speak to investigators in these cases, and learned of much of this information through other people. See Smith Dep. Tr. at 130, PageID.1075 (Q: How did you know or how have you heard about whatever Peraza did? A: Scuttlebutt.), 131, PageID.1075 (Q: What did [Barnett] tell you about it? A: He just explained some allegations brought against – he didn't go into specifics, he just explained some allegations was brought against him. Q: And then you heard the rest from other people? A: Yes, sir.), 160, PageID.1082 (Q: [I]f they'd engaged in criminal conduct, how do you know whether they engaged in criminal conduct or not? A: Because some of them was on stop order. Q: But as far as like the nature of what they were doing, that's scuttlebutt? A: Yes, sir. . . . Unless they told me personally.). Smith's testimony is, as Defendants argue, hearsay, and at any rate, Smith does not have personal knowledge of what happened in each of these cases.

Smith also relies on Stewart's testimony, where Stewart acknowledged that he attended a disciplinary conference for a white police officer, who was recently convicted of a misdemeanor and is still employed. Stewart Dep. Tr., Ex. B to Pl. Resp., at 34-35, PageID.923 (Dkt. 32-2). But Smith was charged with a felony, not a misdemeanor, and there is reason to think that these would be treated differently. For example, Rule 16, "Criminal Acts – Felony" establishes certain reporting requirements when an employee is charged with a felony, and specifically notes that "[f]elonious behavior not resulting in a felony conviction may still result in disciplinary action up to and including discharge for violation of Work Rule #5 'Conduct Unbecoming.'" MDOC Employee Handbook at 24, PageID.357.

14

The second employee that Stewart mentioned was Abraham Paraza, who was still working even though criminal charges were pending against him. Stewart Dep. Tr. at 129, PageID.960. There is no indication that these charges were felony charges, nor is there any basis Stewart identifies for his knowledge of Paraza's conduct and subsequent discipline. Stewart did not testify that he was involved in Paraza's disciplinary proceedings.

Finally, Smith points to testimony from Aaron Payne, where Payne stated that he had never seen a situation where an employee was terminated for failing to report that he was arrested; i.e. for violating Rule No. 38. Aaron Payne Dep. Tr., Ex. E to Pl. Resp., at 72, PageID.1025 (Dkt. 32-5). But Smith was terminated for violating both Rule No. 38 and Rule No. 5, and Payne did not identify an employee who had violated both rules and was still employed by MDOC.[4]

Accordingly, Smith has failed to put forth evidence of a similarly-situated non-protected employee who was treated differently than he was. Because he cannot meet his burden of establishing a prima facie case, the Court need not continue with the burden-shifting analysis. The equal protection claim is dismissed.

### d. Conspiracy pursuant to 42 U.S.C. § 1985

Finally, Smith argues that Defendants conspired to deprive him of the equal protections of the law. In order to prevail on a claim for conspiracy pursuant to 42 U.S.C. § 1985, a plaintiff must prove that defendants

---

[4] Smith also cites an MDOC memorandum regarding "Impact analyses of the disciplinary process," which concluded that "minority employees are disciplined more frequently than non-minorities in the Department of Corrections." MDOC Memorandum, Ex. A to Pl. Resp., at PageID.839 (Dkt. 32-1). As Defendants point out, this 2009 report, which uses data from 2005-2007, is not relevant to whether these Defendants discriminated against Smith. And while Smith also points to testimony from Franks that he could not recall "an occasion where an employee is charged with a felony, suspended for a time, and then fired while criminal proceedings are still pending," SAMF ¶ 64, the lack of knowledge on Franks' part regarding discipline of other MDOC employees does not establish the existence of a similarly-situated non-protected employee who was treated differently than Smith.

> (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999).

Because all of the other claims are dismissed against Defendants Stewart and Franks, the conspiracy claim cannot stand. See Beztak Land Co. v. City of Detroit, 298 F.3d 559, 569 (6th Cir. 2002) ("Because the substantive allegations that form the basis of Beztak's conspiracy claims were properly dismissed, Beztak's conspiracy counts also fail."). Summary judgment on this count is appropriate.

## IV. CONCLUSION

For the reasons provided, Defendants' motion for summary judgment (Dkt. 27) is granted.

SO ORDERED.


Dated: July 9, 2018            s/Mark A. Goldsmith
Detroit, Michigan              MARK A. GOLDSMITH
                               United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2018.

                               s/Karri Sandusky
                               Case Manager